UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- x

SOFT DRINK, BREWERY WORKERS AND DELIVERY EMPLOYEES, INDUSTRIAL EMPLOYEES, WAREHOUSEMEN, HELPERS AND MISCELLANEOUS WORKERS, GREATER NEW YORK AND VICINITY, LOCAL UNION NO. 812,

                          Plaintiff,

    - against –

JOHN ULRICH,

                          Defendant.

----------------------------------- x

ECF

**COMPLAINT**

16-CV-

Plaintiff, Soft Drink, Brewery Workers and Delivery Employees, Industrial Employees, Warehousemen, Helpers and Miscellaneous Workers, Greater New York and Vicinity, Local Union No. 812 (hereafter the "Union"), by its attorneys, Cary Kane LLP, respectfully alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff, a local union under the auspices of the International Brotherhood of Teamsters (hereafter the "I.B.T"), brings this action under Section 301 of the Labor Management Relations Act (hereafter the "LMRA"). Plaintiff seeks redress against defendant John Ulrich (hereafter "Ulrich"), a former Union vice-president who was removed from his position by Joint Council 16 (hereafter the "Joint Council") of the International Brotherhood of Teamsters (hereafter the "I.B.T.") upon the Joint Council's finding that he breached the I.B.T.'s Constitution (hereafter the "Constitution"). The Joint Council faulted Ulrich for using the Union's credit card to pay for

1

personal food and household expenses, unauthorized and unnecessary hotel stays and a bar bill, as well as for misrepresenting the cause and extent of an injury so that he could obtain three months of paid Medical leave over the summer, and refusing to return Union property after his employment was terminated.

2. This Complaint also asserts claims against Ulrich under the Labor and Management Improper Practices Act, *N.Y. Cons. Laws, Art. 20-A, § 722(2)*(2012), (hereafter the "Improper Practices Act"), for engaging in business or financial transactions that conflicted with his fiduciary obligations to the Union and its members. Because these claims are based on the same facts, circumstances and misdeeds as the LMRA claims, they are within the supplemental jurisdiction of this Court in accordance with Section 1367(a), Article 28 of the United States Code, *28 U.S.C. §1367(a)*.

3. The Plaintiff in this action is the local union in which Ulrich served as a vice president until his removal by the Joint Council. The Plaintiff brings this action against Ulrich, for breaching his duties under the Constitution and violating Section 722(2) of the Improper Practices Act.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this action pursuant to Section 301(a) of the LMRA, *29 U.S.C. § 185(a)*, and supplemental jurisdiction over Plaintiff's claim under the Improper Practices Act pursuant to *28 U.S.C. § 1367(a)*.

5. Venue properly lies in this judicial district pursuant to Section 301(c) of the LMRA, *29 U.S.C. § 185(c)*, as duly authorized agents or officers of the Union are engaged in acting for employee members in this district. Under Southern District of New York Local Rule 18(a)(i), this

case should be assigned to White Plains because a major part of the claim arose in the Northern Counties of the Southern District of New York and Ulrich resides in Orange County, which is one of the Northern Counties.

## THE PARTIES

6. At all times material hereto, the plaintiff Union has been a "labor organization" as defined by Section 2(5) of the LMRA, *29 U.S.C. § 152(5),* located at 445 Northern Boulevard, Great Neck, New York.

7. Prior to February 10, 2016, Ulrich was a business agent for the Union responsible for negotiating collective bargaining agreements (hereafter "CBAs") and handling member issues on behalf of the Union. Ulrich received a salary of approximately $127,000 per year from the Union for performing these duties. Ulrich was removed by the Union's Executive Board from his position as a business agent on February 10, 2016, based on evidence that he extorted thousands of dollars in kickbacks from the third party administrator of the benefit fund that provides medical coverage to Union members. Ulrich was a trustee of that fund. Ulrich resides at 505 Bayberry Court, New Windsor, NY 12553.

8. Prior to May 18, 2016, Ulrich was also an elected officer of the Union serving as its vice president. Ulrich was removed as an officer of the Union by the Joint Council following a hearing on charges filed against him.

9. Joint Council 16 determined that the charge against Ulrich for embezzling monies from the Union through unauthorized use of the Union's credit card to purchase personal household items, unauthorized hotel stays and alcohol, was "supported by the overwhelming record evidence."

10. The Joint Council also determined that "Ulrich fraudulently obtained a three month leave with pay by lying about the cause and extent of an injury he sustained on his leg in July of 2015." The Joint Council found "indisputable evidence that Ulrich lied to the Union…Ulrich claimed that he broke his leg and he did not, and also claimed that he had an accident at home when, in fact, Ulrich's own medical records reflect that he was injured at a boat dock and not at his home." The Joint Council concluded that "He (Ulrich) lied to the executive board, and he repeated that lie at a general membership meeting, and in doing so he defrauded the Union."

11. Additionally,, the Joint Council upheld a charge accusing him of refusing to return a phone and computer owned by the Union, noting that Ulrich admitted "that he is refusing to return union's property" and that this was "an unambiguous violation of the I.B.T. Constitution."

12. Ulrich is not incompetent or in the military service.

## RELEVANT FACTS

### Ulrich's Unauthorized and Improper Use of the Union Credit Card

13. On April 3, 2015, Ulrich charged, or permitted his girlfriend to charge $271.78 to a Union credit card that he possessed for business use. This charge was for household and food items purchased at K-Mart.

14. Ulrich did not submit the credit card receipt for these purchases to the Union, as was required by Union policy and procedures.

15. When asked by the Union to explain the K-Mart charges, Ulrich falsely represented that he had purchased a printer for the Union.

16. The receipt from K-Mart relating to the April 3, 2016 purchases does not reflect the purchase of a printer.

17. After learning that the Union had obtained and reviewed the K-Mart receipt, Ulrich changed his story to claim that his girlfriend had mistakenly taken the Union's credit card from his wallet.

18. On or about November 15, 2015, Ulrich purchased $241.15 of household items, including items for renovating a bathroom in his home, from Home Depot using the Union's credit card.

19. Ulrich did not submit the credit card receipt for these purchases to the Union, as was required by Union policy and procedures.

20. When asked to explain the Home Depot charges, Ulrich claimed that he had purchased a generator for the Union.

21. The Union had not asked Ulrich to purchase a generator.

22. Rather than producing the generator and receipt to the Union, Ulrich gave the Union a check in the amount of $245 as a "gift" to cover the cost of the generator.

23. A receipt obtained by the Union from Home Depot for the purchase at issue showed that Ulrich purchased household items, not a generator.

24. As noted by the Joint Council, "When confronted with the receipt...Ulrich made the incredible claim that he made a second purchase at Home Depot on the day in question with $400 in cash, from which the cashier applied 90 dollars to the credit card purchase. Ulrich was asked to provide a second receipt for the generator purchased with cash. Ulrich never provided the receipt, as requested."

25. Ulrich also used the Union's credit card to pay for a May 15, 2014 hotel stay at a Hampton Inn located on South Avenue, Staten Island.

26. Ulrich testified, during a deposition requested by the Union, that he had checked into the hotel because he was tired after attending meetings in Brooklyn and the hotel was on his way home from the meetings.

27. Staten Island is not on any route between Brooklyn and Ulrich's home in New Windsor, New York.

28. The Union did not authorize Ulrich to stay at a hotel on May 15, 2014.

29. Ulrich used the Union's credit card to pay for two other unauthorized hotel stays. The first of these was for a hotel down the street from the Union's offices, and was charged to the Union on November 23, 2013.

30. The second of these charges was for a hotel stay on December 13, 2013, which was the date of the Union's 2013 Christmas party. Ulrich claimed to have stayed at this hotel because he was too drunk to drive home after the party.

31. Union policies and procedures do not provide for the Union to cover hotel stays for officers who over-imbibe at parties.

32. Ulrich also used the Union's credit card on December 13, 2013 to buy $147.75 worth of drinks for himself and others after the Christmas party ended.

33. Union policies and procedures do not provide for the Union to pay bar bills for officers or members so that they can continue partying after a Union event.

34. Ulrich knew that he was not allowed to charge the Union for household expenses, unauthorized purchases, unapproved hotel stays and bar bills.

6

### Paid Medical Leave Obtained by Ulrich's Fraud

35. On July 2, 2016, Ulrich fell and cut his leg.

36. Ulrich told the Union and its members that he fell at home.

37. However, Ulrich's medical records subsequently showed that he had been injured on a boat dock.

38. Ulrich was not supposed to be off work on July 2, 2016 when he fell on the boat dock. Rather, he was scheduled to attend a Union meeting with other Union officers.

39. Ulrich represented to the Union and its members that he had fractured his leg and ankle during the fall when, in fact, he had sustained only a laceration.

40. Based on Ulrich's misrepresentations, the Union granted him Medical leave and paid him salary, benefits and an automobile allowance for three months while he recuperated from his alleged "fracture."

41. In order to perpetuate his fraud, Ulrich redacted portions of the medical records that he provided the Union which would have shown the true location and extent of his injury.

42. The Union learned of these falsifications when it received a second copy of the records that Ulrich had forgotten to redact.

43. The unredacted records included the notation "Mr. Ulrich slipped on a dock and suffered a left pretibial laceration."

44. The records did not reflect any injury incurred by Ulrich at his home, or any fracturing of his leg or ankle.

45. Ulrich attempted to explain the contradictions between his claims and his medical records by representing that he fell twice; first at home and, later, on the boat dock.

46. As noted by the Joint Council, there would have been no reason for Ulrich to have gone to the boat dock after breaking his leg at home.

### Ulrich's Refusal to Return Union Property

47. After Ulrich was terminated as a Union business agent for extorting bribes, he refused the Union's demands that he return a Union issued phone, iPad and laptop.

48. The Constitution requires members to return Union property when they leave Union employment.

## PLAINTIFFS' FIRST CAUSE OF ACTION- UNDER LMRA SECTION 301 FOR VIOLATIONS OF THE I.B.T.'S CONSTITUTION

49. Plaintiffs reassert and re-allege paragraphs "1" through "48" and incorporate them herein.

50. The Constitution is a binding and governing document for all officers and members of the I.B.T. and its affiliated locals, including the Union.

51. As a vice president of the Union and a member of the I.B.T., Ulrich was bound to the provisions of the Constitution.

52. Ulrich violated the oath of office contained in the Constitution (hereafter the "Oath"), which is sworn to by all officers of the I.B.T. and of affiliated bodies of the I.B.T.

53. The Oath reads as follows:

> "I _____,, do sincerely promise, upon my honor as a trade unionist and a Teamster, that I will faithfully use all of my energies and abilities to perform the duties of my office, for the ensuing term, as prescribed by the Constitution and Bylaws of the

8

> *Union. As an officer of this great Union, I will at all times, act solely in the interest of our members... and to protect the members' interests in all dealings with employers...I also promise that at the close of my official term, I will promptly deliver any money or property of this Union in my possession to my successor in office."*

54. The Union is an affiliated body of the I.B.T.

55. Ulrich, was required to, and did take the Oath when he became a vice president of the Union.

56. As a vice president of the Union, Ulrich was required to maintain the promises and standards contained in the Oath.

57. Ulrich breached the Oath by embezzling Union funds through use of the Union's credit card, and fraudulently obtaining salary and benefits by misrepresenting an injury he sustained when skipping work as these actions were performed for his own interest rather than in the interest of Union members.

58. Ulrich breached the Oath by and refusing to return Union property to his successor in interest when his employment was terminated.

59. Ulrich also breached his obligations under Article II, Section 2(a) of the Constitution to not bring reproach on the Union. Ulrich brought reproach on the Union by embezzling union funds, obtaining Union monies and benefits by fraud, and wrongfully retaining Union property.

60. The Joint Council removed Ulrich as vice-president of the Union based on his violations of the Constitution.

61. Section 301 of the LMRA encompasses breaches of the Constitution by an officer of a local, such as Ulrich.

62. Ulrich's breaches of the Constitution harmed the Union as they enabled him to improperly deplete Union accounts and obtain Union assets. Accordingly, Ulrich must make restitution to the Union in an amount equal to the value of the items Ulrich charged to the Union's credit card plus the monies he received in salary, benefits and allowances during the three-month Medical leave that he obtained by lying to the Union.

63. Because he breached the Constitution by improperly retaining Union property, Ulrich must disgorge himself of the Union's phone, iPad and laptop by returning them to the Union or make restitution therefor;

## PLAINTIFFS' SECOND CAUSE OF ACTION- UNDER THE NEW YORK LABOR AND MANAGEMENT IMPROPER PRACTICES ACT

64. Plaintiffs reassert and re-allege paragraphs "1" through "63" and incorporate them herein.

65. Section 722(2) of the Improper Practices Act prohibits any officer of agent of a labor organization from engaging in any business or financial transaction which conflicts with his fiduciary obligations.

66. Ulrich's uses of the Union's credit card for personal purchases, unauthorized hotel stays and bar bills were business or financial transactions which conflicted with Ulrich's fiduciary obligations to the Union.

67. Ulrich's three month, summer Medical leave, for which he received salary, benefits and an automobile allowance, and which was obtained by his falsifying the nature and extent of

his leg injury was a business or financial transaction which conflicted with Ulrich's fiduciary obligations to the Union.

68. Ulrich's wrongful retention of Union property was a business transaction which conflicted with Ulrich's fiduciary obligations to the Union.

69. Ulrich violated the Improper Practices Act by paying for personal items, hotels and drinks with Union funds, by faking his injuries to obtain salary and benefits from the Union and by refusing to return Union property.

70. Section 725 of the Improper Practices Act ("Section 725") provides that an officer who violates the Act, such as Ulrich, may be liable for legal and equitable damages.

71. Section 725 also provides that the Court may award a successful plaintiff organization, such as the Union, reasonable attorneys' fees and disbursements out of any moneys awarded or funds or assets recovered in an action brought under the Improper Practices Act.

72. Through his violations of the Improper Practices Act, Ulrich harmed the Union by improperly depleting its accounts and assets. Accordingly, Ulrich is liable to the Union for an amount equal to the value of the items Ulrich charged to the Union's credit card plus the monies he received in salary, benefits and allowances during the three-month Medical leave that he obtained by lying to the Union.

73. Because he violated the Improper Practices Act when he refused to return Union property, Ulrich must return the Union's phone, iPad and laptop or make restitution therefor;

74. In accordance with Section 725, the Union is entitled to reasonable attorneys' fees and disbursement from any judgment entered against Ulrich.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor and against Defendant John Ulrich, and, more particularly, that this Court order the following relief:

1. As to LMRA claims relating to Ulrich's embezzlement of Union monies and his fraudulently obtained Medical leave: That this court order Ulrich to make restitution to the Union in an amount equal to the value of the items Ulrich charged to the Union's credit card plus the monies he received in salary, benefits and allowances during the three-month Medical leave that he obtained by lying to the Union;

2. As to the LMRA claims relating to Ulrich's retention of Union property: That this court order Ulrich to return the Union's phone, iPad and laptop or make restitution therefor;

3. As to claims arising under the Improper Practices Act and relating Ulrich's embezzlement of Union monies and his fraudulently obtained Medical leave: That this court grant Judgment against Ulrich in an amount equal to the value of the items he wrongfully charged on the Union's credit card plus all salary, benefits and allowances paid to him by the Union during the Medical leave that he obtained by lying to the Union;

4. As to claims arising under the Improper Practices Act and relating to Ulrich's refusal to return Union property: That this court grant judgment against Ulrich in an amount equal to the value of the phone, iPod and laptop wrongfully retained by Ulrich unless he returns these items immediately;

5. As to claims arising under the Improper Practices Act: reasonable attorneys' fees and disbursements incurred by the Union in this action; and

6. For such other and further relief as this Court deems just and equitable.

DATED: January 9, 2016
      New York, New York

<div style="text-align:right">

CARY KANE LLP

By: _____
      Larry Cary

1350 Broadway, Suite 1400
New York, New York 10018
lcary@carykane.com
T: 212-868-6300

*Attorneys for Plaintiffs*

</div>

13