UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Soft Drink, Brewery Workers and Delivery
Employees, Industrial Employees,
Warehousemen, Helpers and Miscellaneous
Workers, Greater New York and Vicinity,
Local Union No. 812,

        Plaintiff,      **MEMORANDUM AND ORDER**

  -against-         17 Civ. 137 (KMK) (AEK)

Ulrich,

        Defendant.
------------------------------------------------------------X
Local 812 Health Fund and Trustees of the
Local 812 Health Fund,

        Plaintiffs,

  -against-         17 Civ. 7023 (KMK) (AEK)

Ulrich,

        Defendant.
------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

  This Court has issued two prior orders regarding the deposition of the *pro se* Defendant in these two cases, John Ulrich, and the Court assumes the parties' familiarity with those orders. *See* ECF Nos. 130 (Mar. 31, 2021) and ECF No. 131 (Apr. 28, 2021).[1] Taken together, the prior orders granted a substantial adjournment of the deposition of Mr. Ulrich, and a corresponding extension of the deadline for completion of fact discovery in the 17 Civ. 137 matter, based on medical concerns raised by Mr. Ulrich following a concussion that he suffered on March 18,

---

[1] Except as otherwise specified, references to "ECF No." in this Order are to entries on the 17 Civ. 137 (KMK) (AEK) docket.

2021. These accommodations were made for Mr. Ulrich despite the unusual and problematic ways in which Plaintiffs' counsel and the Court first learned about the need for additional time. Mr. Ulrich and his fiancée, Andrea Campolo, showed no apparent regard for the fact that the original March 25 and 26 deposition dates had been set by the Court more than one month earlier as part of the parties' February 18, 2021 conference, and made no effort to notify Plaintiffs' counsel about potential obstacles to the March 25 deposition as a result of Mr. Ulrich's March 18 concussion. Mr. Ulrich abandoned the March 25 deposition after one hour to attend a doctor's appointment, without having notified Plaintiffs' counsel about the appointment until the morning of the deposition; moreover, despite agreeing to return for his deposition on March 26, Mr. Ulrich did not appear, and only provided notice to Plaintiffs' counsel well after business hours on March 25. *See* ECF No. 129. While Mr. Ulrich may very well have been experiencing challenges as a result of his March 18 concussion, the failure to communicate with Plaintiffs' counsel and the Court regarding the potential issues is consistent with the casual disregard for Court-ordered deadlines that Mr. Ulrich has exhibited during this litigation. *See* ECF Nos. 114, 126.

In response to the March 31, 2021 order, Mr. Ulrich submitted information from Olga Fishman, M.D. and Richard E. Luria, M.D., which indicated, among other things, that Mr. Ulrich would need at least six weeks of "cognitive rest" before he could testify at a deposition. Based on these letters, the Court revised the schedule so that Mr. Ulrich's deposition could be scheduled on or before a date slightly more than 12 weeks from the date of the concussion and exactly 10 weeks from the date of Dr. Fishman's April 2, 2021 note recommending cognitive rest. *See* ECF No. 131. The parties were directed to meet and confer regarding the scheduling of Mr. Ulrich's deposition, and Plaintiffs' counsel was required to submit a letter to the Court on or

2

before May 21, 2021 either to confirm the agreed-upon dates for the deposition or to notify the Court of any problems with scheduling. The April 28, 2021 order explained that "[t]he Court will not grant any further extensions of this deadline absent truly extraordinary circumstances," and noted that "[s]hould Mr. Ulrich be inclined to seek any further postponement of his deposition based on alleged medical need, he would have to present far more detailed findings from medical professionals than he has to date to demonstrate specifically how and why a deposition would cause him to suffer demonstrable harm." ECF No. 131.

Yet consistent with the uncommunicative, discourteous, and uncooperative approach that was exhibited prior to the March 25 and 26, 2021 deposition, Mr. Ulrich and Ms. Campolo did not engage in meet and confer discussions with Plaintiffs' counsel prior to the May 21, 2021 deadline to provide a status report. Instead, according to Plaintiffs' counsel, Mr. Ulrich and Ms. Campolo ignored email requests sent on April 28, 2021 and May 4, 2021.[2] *See* ECF No. 132. In response to counsel's third email contact on May 18, 2021, Ms. Campolo responded that "[i]nformation will be provided by end of day on May 21st." *Id.* Defendant's complete and total unwillingness to engage in the most basic communications about scheduling represented yet another example of non-compliance with a court order. This cannot be explained or excused either by Mr. Ulrich's *pro se* status or by his medical conditions. Instead, as was the case in the leadup to the March 25 and 26, 2021 deposition, Mr. Ulrich chose to remain silent about his intentions regarding the deposition and opted to proceed by ambush at the last possible minute, even though his plans undoubtedly were formulated earlier.

---

[2] Plaintiffs' counsel's May 18, 2021 letter states that her first attempt to contact Mr. Ulrich and Ms. Campolo following receipt of the Court's April 28, 2021 order was on April 28, 2021, and that her second attempt was on "April 4, 2021." ECF No. 132. The Court understands the reference to "April 4, 2021" to be a typographical error, and assumes that counsel's second email attempt took place on May 4, 2021.

3

On May 20, 2021 and May 21, 2021, Mr. Ulrich filed letters on the 17 Civ. 7023 docket, attaching documentation from Dr. Fishman and Dr. Luria dated May 20, 2021, which Mr. Ulrich characterizes as "detailing specifically the reasons why the defendant is incapable of sitting for the deposition based on his cognitive state." ECF Nos. 56, 57 (17 Civ. 7023 docket). Mr. Ulrich asserts that the documentation from his physicians "meets the threshold of extraordinary set by the Court's [*sic*]," and suggests that he "will provide the court further supporting medical records/letters" as he receives them. *Id.* In both letters, Mr. Ulrich "requests indefinite relief from the courts [*sic*] requirement to sit for a deposition." In response, Plaintiffs' counsel filed a letter in which she requests that the Court order Mr. Ulrich's deposition to take place on a date certain, and argues that it would be appropriate for the Court to impose sanctions on Mr. Ulrich pursuant to Rule 37 of the Federal Rules of Civil Procedure should Mr. Ulrich again fail to appear for the court-ordered deposition. *See* ECF No. 133 and ECF No. 58 (17 Civ. 7023 docket). Mr. Ulrich then filed another letter on May 28, 2021, this time on the 17 Civ. 137 docket, attaching documentation from his psychotherapist, Nancy Tricamo, LCSW. *See* ECF No. 134. Once again, Mr. Ulrich asserts that the documentation specifically details the reasons why his cognitive state makes him incapable of sitting for a deposition, and meets the Court's threshold of extraordinary circumstances. *Id.*

Though Mr. Ulrich's request for an indefinite postponement of his deposition is not expressly framed as a request for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure barring the deposition on the basis of health considerations, in light of Mr. Ulrich's *pro se* status, the Court will treat the May 20, May 21, and May 28 submissions as such. "A prohibition against the taking of an oral deposition is a very unusual procedure and a party who seeks a protective order prohibiting such a deposition bears a heavy burden of

4

demonstrating good cause for such an order." *In re McCorhill Pub., Inc.*, 91 B.R. 223, 225 (Bankr. S.D.N.Y. 1988); *see also Qube Films Ltd. v. Padell*, No. 13 Civ. 8405 (AJN), 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) ("it is well recognized that entirely prohibiting the taking of an oral deposition is very unusual").[3] Where a protective order is requested on the basis of the deponent's health, the moving party must show "that a clearly defined, specific and serious injury will occur in the absence of such an order." *Qube Films*, 2015 WL 109628, at *2 (quotation marks omitted). Furthermore, "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, are not sufficient to satisfy the burden." *Kamdem-Ouaffo v. Balchem Corp.*, No. 17 Civ. 2810 (PMH) (PED), 2020 WL 8838038, at *8 (S.D.N.Y. Dec. 23, 2020) (quoting *Qube Films*, 2015 WL 109628, at *2). Protective orders are not granted "where the contentions of a treating physician are conclusory or speculative in nature . . . . If harm to a witness from a deposition is of potential concern, but does not rise to the level of a clearly defined and serious injury, courts can fashion accommodations to limit the potential harm to the deponent." *Id.*

The supplemental letters from Dr. Fishman and Dr. Luria, *see* ECF Nos. 56-1 and 57-1 (17 Civ. 7023 docket), and the letter from Ms. Tricamo, ECF No. 134-1, do not satisfy the "heavy burden" of demonstrating good cause to grant a protective order to stop the deposition of Mr. Ulrich from proceeding. These recent medical submissions on behalf of Mr. Ulrich are hardly any more descriptive or detailed than the April submissions—none of the letters present "detailed findings" that "demonstrate specifically how and why a deposition would cause [Mr.

---

[3] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Rule 7.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases that are unpublished or only available by electronic database shall be simultaneously delivered to the *pro se* Defendant along with this Memorandum and Order.

Ulrich] to suffer demonstrable harm," *see* ECF No. 131, nor do they set forth "a clearly defined and serious injury" that would result for Mr. Ulrich.

Dr. Luria's May 20, 2021 letter contains even less information than his April 1, 2021 letter. Most of the current letter refers to Mr. Ulrich's longstanding medical conditions, but as discussed in the April 28, 2021 order, Mr. Ulrich has been able to participate in this litigation despite those conditions. The only new piece of information in Dr. Luria's May 20, 2021 letter is the assertion that as a result of his March 2021 concussion, Mr. Ulrich's "loss of memory has so worsened that he is cognitively incapable of participating in a deposition." ECF No. 57-1 (17 Civ. 7023 docket). Memory limitations, however, are not a basis to be excused from a deposition. *See Qube Films*, 2015 WL 109628, at *4 ("The Court notes that there appears to be no dispute that [the witness] suffers from certain cognitive decline that may render him unable to recall the answers to questions that may be posed to him at his deposition. To the extent that is the case, [the witness] may respond, as anyone may do in like circumstances, with an answer to that effect."). At any deposition, if the witness is asked a question to which the honest and truthful answer is that he or she does not remember—whether because of the passage of time, because of cognitive impairment, or for some other reason—then the appropriate answer is for the witness to testify that he or she does not remember. Of course, a witness cannot testify that he or she does not remember simply to avoid having to answer a question—the only time that "I do not remember" is an appropriate answer to a question is if the witness truly does not remember. Further, if a witness testifies at a deposition that he or she does not remember a particular fact or event, the witness would be subject to vigorous scrutiny and cross-examination if he or she were to suddenly remember that same fact or event at a later point in the case, such as during testimony at trial. To the extent she was not previously aware, Plaintiffs' counsel has

6

now been informed, as a result of Dr. Luria's letter, that Mr. Ulrich's March 2021 episode has caused him to suffer additional memory loss; she will have to take this information into account when formulating her questions and her strategic approach to the deposition. In sum, nothing in Dr. Luria's letter indicates that Mr. Ulrich would suffer a clearly defined and serious injury if he were required to participate in a deposition, and thus the letter provides no support for Mr. Ulrich's request that his deposition be postponed indefinitely.

The filing from Mr. Ulrich's psychotherapist, Ms. Tricamo, also does not satisfy the "heavy burden" of demonstrating good cause to grant a protective order. *See* ECF No. 134-1. While Ms. Tricamo's letter includes additional details about Mr. Ulrich's cognitive issues, the focus is on Mr. Ulrich's past medical condition and on his ability to recall past events at a deposition. As discussed above, the fact that Mr. Ulrich may experience confusion and memory recall difficulties cannot excuse him from his obligation to appear at his deposition. Ms. Tricamo opines that participating in a deposition would be "very challenging" for Mr. Ulrich, as he would become frustrated that he is unable to recall past events. But this also does not rise to the level of a clearly defined and serious injury that would warrant indefinite postponement of the deposition.

Dr. Fishman's May 20, 2021 letter consists of five sentences, four of which are identical to the letter submitted by Dr. Fishman on April 2, 2021. The one sentence in the May 20, 2021 letter that contains any new information is merely a slight amplification of the April 2, 2021 submission. Instead of a recommendation for six weeks of "cognitive rest," Dr. Fishman now writes that a deposition, "whether it is performed now or 6 months from now," would "exacerbate headaches" and "significantly contribut[e] to his ongoing poor functional performance from the neurological standpoint." ECF No. 56-1 (17 Civ. 7023 docket). While Dr.

Fishman's letter presents more information regarding potential harm to Mr. Ulrich than either of the other letters, it is hardly enough of a basis on which to grant the extraordinary relief that Mr. Ulrich is requesting. The "findings" in this letter are no more detailed than in Dr. Fishman's earlier letter, and the May 20, 2021 letter provides no explanation for why Dr. Fishman's assessment of Mr. Ulrich changed from one where "at least six weeks of cognitive rest" was considered sufficient to one where no deposition could ever be possible for this individual. The Court recognizes that Dr. Fishman's job is to assess what would be best for her patient, without regard to external factors—Dr. Fishman's recommendation does not (and should not) take into account Mr. Ulrich's prior course of conduct in these lawsuits, the prejudice to the plaintiffs in these cases if Mr. Ulrich's deposition were to be postponed indefinitely, or the complexity of attempting to schedule a deposition at some future point when Mr. Ulrich is in the custody of the Federal Bureau of Prisons. But these are factors that the Court must evaluate, and at bottom, Mr. Ulrich has not provided a sufficient basis for the Court to conclude that requiring him to sit for a deposition would cause Mr. Ulrich to suffer a clearly defined and serious injury. The Court recognizes that Mr. Ulrich's medical conditions may cause him to experience some physical discomfort during the course of his testimony. Unfortunately, it is not uncommon for witnesses at depositions to experience a degree of discomfort, whether physical, mental, or emotional. As further set forth below, the Court will require certain additional accommodations to account for this, including allowing Mr. Ulrich to testify from his home, with frequent breaks, and for a shorter period of time than is permissible under the Federal Rules of Civil Procedure. In light of the information that has been presented and the totality of the circumstances of these lawsuits, Mr. Ulrich's deposition must go forward. Accordingly, Defendant's application for an indefinite

postponement of his deposition is DENIED, and Plaintiffs' request that the deposition be scheduled for a date certain is GRANTED.

It is hereby ordered that Mr. Ulrich's deposition will take place on June 8 and June 9, 2021. The deposition will proceed by video, using the same or comparable technology arrangements that had been made for the March 25 and March 26 deposition. Plaintiffs' counsel requested that the deposition take place at the Courthouse so that the parties could more easily contact the Court if Mr. Ulrich refuses to answer the questions posed to him. *See* ECF No. 133. That request is DENIED. Current public health protocols would make it impracticable for an in-person deposition to take place in the Courthouse, and the Court will not impose that additional burden on Mr. Ulrich in light of his medical conditions. To the extent the parties need to contact the Court during the deposition, they may call chambers at 914-390-4070.

Rule 30(d)(1) of the Federal Rules of Civil Procedure specifies that a deposition is limited to seven hours of time spent questioning the witness (not including breaks for rest or lunch). Because Mr. Ulrich is being deposed in two different cases, Plaintiff could, pursuant to Rule 30(d)(1), question Mr. Ulrich for a total of 14 hours. But because there is substantial overlap between the two cases, and in light of Mr. Ulrich's medical conditions, Plaintiff will be limited to 12 hours of questioning of Mr. Ulrich over the two-day deposition. This will allow Mr. Ulrich to take frequent and, if necessary, extended breaks after each hour of questioning, while still permitting Plaintiff to complete up to 12 hours of questioning over the two-day period. If necessary to facilitate Mr. Ulrich's attendance at the deposition, Ms. Campolo is permitted to be in the room with Mr. Ulrich while he is being deposed. To avoid any possibility of improper communications between Ms. Campolo and Mr. Ulrich during the course of the deposition, Ms. Campolo must be visible on the video screen, either alongside Mr. Ulrich or behind Mr. Ulrich,

if Mr. Ulrich chooses to have Ms. Campolo be present in the room while he is answering questions.

\* \* \* \* \* \* \* \* \* \*

Mr. Ulrich is hereby warned that if he fails to participate in his deposition on June 8 and June 9, 2021, this failure will result in the imposition of sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure. Rule 37(d)(1)(A)(i) provides that "the Court may, on motion, order sanctions if a party . . . fails, after being served with proper notice, to appear for that person's deposition." The types of sanctions available for a failure to appear for a deposition include any of the sanctions listed in Rule 37(b)(2)(A)(i)-(vi), and the Court "*must* require the party failing . . . to act pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust" (emphasis added). Plaintiffs have requested as potential sanctions that the Court award judgment by default on all claims asserted in the complaints, or "direct[ ] that the facts pleaded in Plaintiffs' complaints, all of which were to be explored at deposition, be taken as established for purposes of these cases and prohibiting Defendant from opposing Plaintiffs' claims or introducing evidence disputing the facts asserted by Plaintiffs." ECF No. 133.

"All litigants, including *pro ses,* have an obligation to comply with court orders, and failure to comply may result in sanctions." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (quotation marks, citation, and alterations omitted). "When determining the appropriate sanction to impose under Rule 37, courts in this Circuit weigh several factors, including (1) the willfulness of acts underlying noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of noncompliance; and (4) whether the noncompliant party was on

notice that it faced possible sanctions." *Granados v. Traffic Bar & Rest., Inc.*, No. 13 Civ. 500 (TPG) (JCF), 2015 WL 9582430, at *3 (S.D.N.Y. Dec. 30, 2015) (quotation marks omitted).

Given the circumstances here, recommending the entry of a default judgment against Mr. Ulrich would be too severe a sanction for a potential failure to appear at a deposition. *See id.* at *6. What would be appropriate, however, would be to preclude Mr. Ulrich from offering any testimony in support of his defenses in this case at any future stage of this litigation, whether in the form of a declaration in opposition to a potential motion for summary judgment, or in the form of testimony at trial. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii) (authorizing sanction of "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"). This sanction should have a significant deterrent effect for Mr. Ulrich, as it would make it challenging for him to continue to defend himself in these lawsuits. Yet the potential sanction is also properly tailored to the potential discovery violation of Mr. Ulrich failing to appear for his own deposition despite an explicit order to do so and despite the Court's efforts to put in place certain protections to account for Mr. Ulrich's medical concerns. In addition, the Court would expect to award reasonable costs and expenses to Plaintiffs' counsel in connection with her preparation for the deposition and any fees paid to a court reporting service.

\* \* \* \* \* \* \* \* \* \*

It is the Court's understanding from multiple prior status conferences in the 17 Civ. 137 matter that Mr. Ulrich's deposition is the last outstanding item of discovery in that case, and that discovery therefore will be completed by the June 11, 2021 deadline established in the April 28 order. The Court has a general understanding that discovery in the 17 Civ. 7023 matter—which is now referred to the undersigned for general pretrial supervision, *see* ECF No. 50 (17 Civ. 7023

docket)—has been proceeding on a parallel track, and that discovery there should be able to be completed by June 11, 2021 as well.  On or before June 25, 2021, the parties are directed to submit separate letters to the Court to inform the Court as to whether they believe there to be any outstanding issues for discovery.  If Mr. Ulrich should fail to appear for the deposition, as part of Plaintiffs' June 25, 2021 submission, counsel should include a formal request for specific sanctions, including the specific amount of costs and expenses.  Any application for costs and expenses must be supported with an attorney affidavit and appropriate documentation.

      Chambers staff will send a copy of this order via e-mail to Ms. Campolo and will mail a copy of this Order to the *pro se* Defendant.

Dated: June 1, 2021
       White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge