UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SOFT DRINK, BREWERY WORKERS AND DELIVERY EMPLOYEES, INDUSTRIAL EMPLOYEES, WAREHOUSEMEN, HELPERS, AND MISCELLANEOUS WORKERS, GREATER NEW YORK AND VICINITY, LOCAL UNION NO. 812, | No. 17-CV-137 (KMK) |

                                        Plaintiff,

           v.

JOHN ULRICH,

                                        Defendant.

---

LOCAL 812 HEALTH FUND *and*
TRUSTEES OF THE LOCAL 812 HEALTH
FUND,

                                        Plaintiffs,                    No. 17-CV-7023 (KMK)

                                                                      <u>OPINION & ORDER</u>

           v.

JOHN ULRICH,

                                        Defendant.

---

<u>Appearances</u>:

Susan Bruno, Esq.
Cary Kane LLP
New York, NY
*Counsel for All Plaintiffs*

John Ulrich
Butner, NC
*Pro se Defendant*

KENNETH M. KARAS, United States District Judge:

Soft Drink, Brewery Workers and Delivery Employees, Industrial Employees, Warehousemen, Helpers, and Miscellaneous Workers, Greater New York and Vicinity, Local Union No. 812 ("the Union"), Local 812 Health Fund ("the Health Fund"), and Trustees of the Local 812 Health Fund ("Trustees"; together with the Health Fund, the "Health Fund Plaintiffs"), bring these related Actions against John Ulrich ("Defendant"), proceeding pro se, alleging that Defendant committed various misconduct during his tenure as business agent and vice president of the Union and trustee of the Health Fund.  (*See generally* Union's Am. Compl. (Dkt. No. 65, Case No. 17-CV-137); Health Fund Pls.' Compl. (Dkt. No. 1, Case No. 17-CV-7023).)[1]  Before the Court are the Union's Motion for Summary Judgment (the "Union's Motion") and Health Fund Plaintiffs' Motion for Summary Judgment (the "Health Fund Plaintiffs' Motion"; together with the Union's Motion, the "Motions").  (*See* Union's Not. of Mot. (Dkt. No. 142, Case No. 17-CV-137); Health Fund Pls.' Not. of Mot. (Dkt. No. 75, Case No. 17-CV-7023).)  For the following reasons, the Motions are granted.

I.  Background

A.  Factual Background

The following facts are taken from the Union and Health Fund Plaintiffs' Statements pursuant to Local Civil Rule 56.1, (*see* Union's Rule 56.1 Statement ("Union's 56.1") (Dkt. No. 149, Case No. 17-CV-137); Health Fund Pls.' Rule 56.1 Statement ("Health Fund Pls.' 56.1") (Dkt. No. 74, Case No. 17-CV-7023)), and the admissible evidence submitted by the

---

[1] The Court refers herein to Case No. 17-CV-137 as the "Union Action" and Case No. 17-CV-7023 as the "Health Fund Action."

Union and Health Fund Plaintiffs.[2]  These facts are viewed "in the light most favorable to"

Defendant, the non-movant on both Motions.  *See Torcivia v. Suffolk County*, 17 F.4th 342, 354

(2d Cir. 2021).  The facts below are in dispute only to the extent indicated.[3]

_____

[2] As explained *infra*, Defendant did not respond to either of the Motions, and therefore, has not submitted any evidence to the Court.

[3] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The non-moving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civ. R. 56.1(b).  "Pro se litigants are not excused from meeting the requirements of Local Rule 56.1," *Freistat v. Gasperetti*, No. 17-CV-5870, 2021 WL 4463218, at *1 (E.D.N.Y. Sept. 29, 2021) (italics, alteration, and citation omitted), and "[a] non[-]moving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible," *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (same).  Here, the Union and Health Fund Plaintiffs filed and served their Statements pursuant to Local Rule 56.1, (*see* Dkt. No. 145, Case No. 17-CV-137; Dkt. No. 74, Case No. 17-CV-7023), and filed and served Statements notifying Defendant of the potential consequences of not responding to the Motions, as required by Local Rule 56.2, (*see* Dkt. No. 145-1, Case No. 17-CV-137; Dkt. No. 74-1, Case No. 17-CV-7023).  Despite this notice, Defendant failed to submit a substantive response either to the Union and Health Fund Plaintiffs' 56.1 Statements, in particular, or the Motions, in general.  *See infra* I.B.  Accordingly, the Court may conclude that the facts in the Union and Health Fund Plaintiffs' 56.1 Statements are uncontested and admissible.  *See Brandever v. Port Imperial Ferry Corp.,* No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal,* No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record" when deciding the instant Motions, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks omitted); *see also Day v. MTA N.Y.C. Transit Auth.*, No. 17-CV-7270, 2021 WL 4481155, at *9 (S.D.N.Y. Sept. 30, 2021) ("[W]here a pro se plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (italics and citation omitted)); *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 502 n.1 (S.D.N.Y. 2015) (considering "the statements and documents in [the] [p]laintiff's opposition papers to determine if there are any material issues of fact based on the evidence in the record," but disregarding factual assertions that "do not contain citations to the

### 1.  Facts Pertaining to the Union's Motion

The Union is a local organization under the auspices of the International Brotherhood of Teamsters ("IBT"), which represents its beverage industry worker-members with regard to the terms and conditions of their employment.  (*See* Union's 56.1 ¶ 1.)  All local IBT organizations are bound by the terms of the IBT Constitution, which, among other things, includes an oath of office that all IBT officers are required to take when first installed to their positions.  (*See id.* ¶¶ 2–3.)  The oath of office provides, in relevant part:

> I . . . promise that I will faithfully comply with and enforce the Constitution and laws of the International Union and Bylaws of this Union, and that I will, at all times, by example, promote harmony and preserve the dignity of this Union.  I also promise that at the close of my official term, I will promptly deliver any money or property of this Union in my possession to my successor in office.

(*See* Affidavit of Susan Bruno in Supp. of Union Mot. (Dkt. No. 142-2, Case No. 17-CV-137), Ex. B (Dkt. No. 142-6, Case No. 17-CV-137), at 2–3.)

At all relevant times through 2016, Defendant was an IBT officer.  At all relevant times through May 2016, Defendant was the elected vice president of the Union; as vice president, Defendant was also a member of the Union's executive board.  (*See* Union's 56.1 ¶¶ 4–5.)  At all times relevant through February 2016, Defendant was also an appointed and paid business agent of the Union.  (*See id.* ¶ 6.)  When Defendant was installed in these positions, the Union

---

record, or are not supported by the citations in the record"); *Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the [c]ourt has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response).

provided Defendant with an iPhone, iPad, and laptop (the "Union Property") to use when conducting business for the Union.  (*See id.* ¶ 7.)

In February 2016, the Union terminated Defendant as a business agent for misconduct, but Defendant refused to return the Union Property.  (*See id.* ¶¶ 9, 11, 13.)  This refusal continued through the Union's removal of Defendant as vice president in May 2016 for the same and additional misconduct, which included Defendant's refusal to return the Union Property. (*See id.* ¶¶ 10–13.)  Further requests by the Union for Defendant to return the Union Property throughout the pendency of the Union Action have similarly been unsuccessful.  (*See id.* ¶¶ 13–17.)

The Union paid $325.86 to purchase Defendant's Union cell phone at some point between November 14, 2014 and December 15, 2014.  (*See* Bruno Union Aff. Ex. G (Dkt. No. 142-11, Case No. 17-CV-137).)[4]  The Union eventually purchased replacements for the laptop and iPad that Defendant refused to return in October 2016 and May 2021, respectively, spending $1,500.30 to replace the laptop and $498.59 to replace the iPad.  (*See id.*; *see also* Scarpati Aff. ¶¶ 5–7.)

---

[4] The Union's Controller, James Scarpati, attested that "[i]n late 2014, the Union purchased a new iphone to replace the one that [Defendant] had not returned at a cost of $325.86."  (Affidavit of James Scarpati in Supp of Union Mot. ("Scarpati Aff.") ¶ 6 (Dkt. No. 142-1, Case No. 17-CV-137).)  While the timing and amount of this transaction are reflected in the invoices included in the Union's submission, (*see* Bruno Union Aff. Ex. G), this timing is not consistent with Defendant's removal from office; the Union could not have purchased a "new iphone to *replace* the one that [Defendant] had not returned," (Scarpati Aff. ¶ 6 (emphasis added)), in *2014* when Defendant was not removed from his positions until February and May *2016*, (*see* Union's 56.1 ¶¶ 9–10).  Rather, it appears that the referenced 2014 transaction reflects the purchase of the iPhone for Defendant's use while conducting business for the Union.

2.  Facts Pertaining to Health Fund Plaintiffs' Motion

Between 2013 and February 2016, Defendant was also a trustee of the Health Fund, the entity that provided health insurance benefits to members of the Union.  (*See* Health Fund Pls.' 56.1 ¶ 1; *see also* Affidavit of Susan Bruno in Supp. of Health Fund Pls.' Mot. ("Bruno Health Fund Pls. Aff.") (Dkt. No. 77, Case No. 17-CV-7023), Ex. B ("Plea Tr.") (Dkt. No. 77-2, Case No. 17-CV-7023), at 21:24–22:3.)  Prior to 2013, the Health Fund contracted with a third-party administrator, Crossroads Healthcare Management ("Crossroads"), to process insurance claims for the Union's members for a per capita fee.  (*See* Plea Tr., at 22:3–5; *see also* Health Fund Pls.' 56.1 ¶¶ 1, 12.)  In 2013, the Trustees—which at this point, included Defendant—were considering replacing Crossroads as the Health Fund's third-party administrator, and issued a request for proposals to other potential third-party administrators.  (*See* Health Fund Pls.' 56.1 ¶ 1.)  However, the Trustees did not ultimately replace Crossroads as the Health Fund's third-party administrator because of Defendant's intervention.  (*See id.* ¶ 2; *see also* Plea Tr. 22:5–11.)  Between 2013 and 2016, Defendant, alongside other members of the Union's executive board and trustees of the Health Fund, solicited and received thousands of dollars in bribes from a Crossroads employee in exchange for ensuring that the Health Fund continued to retain Crossroads as its third-party administrator.  (*See* Plea Tr. 22:5–11; *see also* Health Fund Pls.' 56.1 ¶¶ 3, 7–9.)

The Trustees became aware of this kickback scheme in February 2016, and Defendant was swiftly removed from his position as trustee of the Health Fund; the Trustees also informed the United States Attorney for the Southern District of New York of Defendant's misconduct. (*See* Health Fund Pls.' 56.1 ¶¶ 3–5.)  Defendant was ultimately indicted for and pled guilty to conspiracy to solicit and receive bribe payments to influence the operations of an employee benefit plan, admitting to the misconduct laid out above.  *See infra* I.B.

The Trustees then replaced Crossroads with MagnaCare as the Health Fund's third-party administrator, effective January 1, 2016. (*See* Health Fund Pls.' 56.1 ¶ 11.) MagnaCare offered the same services as Crossroads at a significantly lower per capita fee, and had Defendant replaced Crossroads with MagnaCare in 2013 after issuing the request for proposals, the Health Fund would have saved an estimated $1,007,228.78 in fees between January 1, 2013 and July 1, 2016. (*See id.* ¶ 13.)

B.  Procedural History[5]

The initial Complaint in the Union Action was filed on January 9, 2017. (*See* Union's Compl. (Dkt. No. 1, Case No. 17-CV-137).) At this point in time, Defendant was represented by counsel, (*see* Dkt. No. 7, Case No. 17-CV-137), and on February 2, 2017, Defendant filed a pre-motion letter in anticipation of filing a motion to disqualify Plaintiff's counsel as conflicted and a motion to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim, (*see* Dkt. No. 8, Case No. 17-CV-137). After receiving a response from the Union, (*see* Dkt. No. 9, Case No. 17-CV-137), the Court held a pre-motion conference on March 7, 2017, (*see* Dkt., Case No. 17-CV-137 (minute entry for Mar. 7, 2017)). At the pre-motion conference, the Court set a deadline on the Union's answer and directed the Parties to submit a case management order. (*See id.*) On March 23, 2017, the Court entered a Case Management & Scheduling Order, (*see* Dkt. No. 14, Case No. 17-CV-137), and on April 7, 2017, Defendant filed an Answer in which he raised a number of counterclaims, (*see* Union Answer (Dkt. No. 17, Case No. 17-CV-137)). This was then followed by Defendant's filing of an Answer with

_____

[5] The procedural history of these related cases is—charitably speaking—complicated, involving as many as four interrelated civil cases before this Court and a criminal prosecution before Judge Analisa Torres. (*See* Dkt., Case No. 17-CV-137; Dkt., Case No. 17-CV-4730; Dkt., Case No. 17-CV-5547; Dkt., Case No. 17-CV-7023; Dkt., Case No. 19-CR-107.) The Court has attempted to simplify and streamline the recitation of this procedural history here to only the relevant background.

Amended Counterclaims, (*see* Am. Union Answer (Dkt. No. 21, Case No. 17-CV-137)), and a

Third-Party Complaint bringing claims against the Union and a number of other third-party

defendants associated with the Union and Health Fund, (*see* Third-Party Compl. (Dkt. No. 22,

Case No. 17-CV-137)).  On April 21, 2017, Defendant filed another Answer, with Second

Amended Counterclaims.  (*See* Second Am. Union Answer (Dkt. No. 30, Case No. 17-CV-137).)

On April 24, 2017, the Union filed a pre-motion letter in anticipation of filing a motion to

dismiss the Third-Party Complaint and a motion to strike Defendant's counterclaims.  (*See* Dkt.

No. 32, Case No. 17-CV-137.)  After receiving a response from Defendant, (*see* Dkt. No. 36,

Case No. 17-CV-137), and a reply from the Union, (*see* Dkt. No. 37, Case No. 17-CV-137), the

Court held a conference on May 15, 2017 and set a briefing schedule, (*see* Dkt., Case No. 17-

CV-137 (minute entry for May 15, 2017); Dkt. No. 39, Case No. 17-CV-137).  Pursuant to this

briefing schedule, the Union filed its Motion To Dismiss Various Counterclaims and Affirmative

Defenses, Dismiss the Third-Party Complaint, and Limit or Strike Certain of Defendant's

Document Demands on June 1, 2017.  (*See* Union's Not. of Mot. to Dismiss (Dkt. No. 47).)

Before Defendant responded to the Union's motion, however, Defendant initiated a new action

against the Union and a series of related defendants on June 22, 2017 (the "Ulrich Action").  (*See*

Ulrich Compl. (Dkt. No. 1, Case No. 17-CV-4730).)[6]  Accordingly, on July 6, 2017, the Union

sought to stay all pending discovery and briefing deadlines sine die until the Parties could

discuss with the Court how best to handle the matters raised by the Ulrich Action.  (*See* Dkt.

No. 56, Case No. 17-CV-137.)  The Court granted this request on the same day.  (*See* Dkt.

No. 57, Case No. 17-CV-137.)  The Court held a status conference on July 13, 2017, (*see* Dkt.,

---

[6] Defendant voluntarily sought to withdraw the Ulrich Action on March 4, 2020, and on
March 5, 2020, the Court dismissed it with prejudice.  (*See* Dkt. Nos. 101, 102, Case No. 17-CV-
4730.)

Case No. 17-CV-137 (minute entry for July 13, 2017)), and on July 24, 2017, the Parties filed a stipulation in which Defendant agreed to dismiss all counterclaims and the Third-Party Complaint and the Parties agreed to consolidate the Union Action and the Ulrich Action for discovery and trial, (*see* Dkt. No. 60, Case No. 17-CV-137)).

On October 23, 2017, the Union filed an Amended Complaint, (*see* Union's Am. Compl.), and on January 22, 2017, Defendant filed an Answer in which he brought a number of affirmative defenses and counterclaims, (*see* Union Answer to Am. Compl. (Dkt. No. 70, Case No. 17-CV-137)).  Defendant's counterclaims were later dismissed by the Court.  (*See* Dkt. No. 82, Case No. 17-CV-137.)

Meanwhile, on September 14, 2017, Health Fund Plaintiffs filed their Complaint against Defendant.  (*See* Health Fund Pls.' Compl.)  The Health Fund Action was accepted by this Court as related to the then-pending Ulrich Action, which was, in turn, related to the Union Action. (*See* Dkt., Case No. 17-CV-7023 (entry for Sept. 20, 2017).)  Defendant filed an Answer on January 22, 2018.  (*See* Health Fund Pls.' Answer (Dkt. No. 15, Case No. 17-CV-7023).)

On February 20, 2019, a federal grand jury returned a four-count indictment against Defendant based on much of the same conduct that underlay the civil cases.  (*See* Indict. (Dkt. No. 1, Case No. 19-CR-107).)  On February 21, 2019, Defendant was arrested.  (*See* Dkt. No. 5, Case No. 19-CR-107.)  On December 12, 2019, Defendant pled guilty to Count One of the indictment: conspiracy to solicit and receive bribe payments to influence the operation of an employee benefit plan, in violation of 18 U.S.C. § 371.  (*See* Plea Tr.)  Defendant was ultimately sentenced to 18 months of imprisonment.  (*See* Dkt., Case No. 19-CR-107 (minute entry for July 22, 2020); Judg. (Dkt. No. 54, Case No. 19-CR-107).)

On January 29, 2020, Defendant's counsel filed a letter seeking the Court's approval to withdraw as counsel for Defendant in both the Union Action and the Health Fund Action. (*See* Dkt. No. 89, Case No. 17-CV-137; Dkt. No. 24, Case No. 17-CV-7023.)  The Court approved the withdrawal, (*see* Dkt. No. 25, Case No. 17-CV-7023; *see also* Dkt. No. 95, Case No. 17-CV-137), and thereafter, Defendant proceeded pro se in the civil cases.

On March 3, 2020, the Court entered a Case Management and Scheduling Order in the Health Fund Action, (*see* Dkt. No. 30, Case No. 17-CV-7023), and on April 3, 2020, the Court entered an identical Case Management and Scheduling Order in the Union Action, (*see* Dkt. No. 94, Case No. 17-CV-137).  Thereafter, the Parties finally proceeded to orderly discovery under the supervision of Magistrate Judges Lisa Smith and Andrew Krause.  (*See* Dkt. Nos. 97–138, Case No. 17-CV-137; Dkt. Nos. 31–64, Case No. 17-CV-7023.)  On November 15, 2021, the Union and Health Fund Plaintiffs sought leave to file motions for summary judgment, (*see* Dkt. No. 139, Case No. 17-CV-137; Dkt. No. 65, Case No. 17-CV-7023), and the Court set concurrent briefing schedules, (*see* Dkt. No. 141, Case No. 17-CV-137; Dkt. No. 67, Case No. 17-CV-7023).  On December 21, 2021, the Union and Health Fund Plaintiffs filed their Motions for Summary Judgment and ancillary papers.  (*See* Union's Not. of Mot.; Scarpati Aff.; Affidavit of Joseph Vitta in Supp. of Union Mot. (Dkt. No. 142-3, Case No. 17-CV-137); Bruno Union Aff.; Union's Mem. of Law in Supp. of Mot. ("Union's Mem.") (Dkt. No. 142-4, Case No. 17-CV-137); Health Fund Pls.' Not. of Mot.; Affidavit of Joseph Vitta in Supp. of Health Fund Pls.' Mot. (Dkt. No. 78, Case No. 17-CV-7023); Bruno Health Fund Pls. Aff.; Health Funds Pls.' Mem. of Law in Supp. of Mot. ("Health Fund Pls.' Mem.") (Dkt. No. 76, Case No. 17-CV-7023).)  Both the Union and Health Fund Plaintiffs initially failed to file either Rule 56.1 Statements or Rule 56.2 Notices; these documents were filed on January 28, 2022 and, in

light of the delay, the Court granted Defendant an extension of time to respond to the Motions.

(*See* Union's 56.1; Union's 56.2 Not.; Dkt. No. 148, Case No. 17-CV-137; Health Fund Pls.'

56.1; Health Fund Pls.' 56.2 Not.)[7]

      To date, Defendant has failed to substantively respond to either Motion.  However, the

Court has received two letters from Defendant.  In the first letter, dated February 24, 2022,

Defendant sought an extension of time to respond to the Motions, and the Court granted a 30-day

extension.  (*See* Dkt. No. 79, Case No. 17-CV-7023.)  In the second letter, dated May 11, 2022

and styled as a "motion to dismiss," Defendant made a litany of accusations against a collection

of individuals which are not supported by any evidence and largely irrelevant to the instant

Motions.  (*See* Ulrich Ltr. (Dkt. No. 80, Case No. 17-CV-7023).)

      Accordingly, the Court deems both Motions fully submitted.

## II.  Discussion

### A.  Standard of Review

      Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.

R. CIV. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same).  "In deciding whether to award summary judgment, the [C]ourt must construe the

record evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in its favor."  *Torcivia*, 17 F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232,

240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute

exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also*

---

    [7] The Union appears to have re-filed its summary judgment briefing multiple times for no apparent reason.  (*See* Dkt. Nos. 149–158, Case No. 17-CV-137.)  The papers appear to be identical, therefore, the Court refers to the first-filed versions of the Union's Motion papers.

*Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental*

*Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).  At this stage, "[t]he role

of the court is not to resolve disputed issues of fact but to assess whether there are any factual

issues to be tried."  *Brod v. Omya*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted).

Thus, a court's goal should be "to isolate and dispose of factually unsupported claims."  *Geneva*

*Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider only

evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,

164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits . . . to establish facts, the

statements 'must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant . . . is competent to testify on the matters stated.'"  *DiStiso v.*

*Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting FED. R. CIV. P. 56(c)(4)); *see also Sellers v.*

*M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for

summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v.*

*Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the]

[p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5

(S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could

believe the witness had personal knowledge." (quotation marks omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for

summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham v.*

*Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988); *accord Mercado v. Div. of N.Y. State Police,* No. 96-

CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe

"the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest

13

arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted). Further, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment." *Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[] made in light of the opposing party's pro se status" (italics omitted)). Nonetheless, "proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (italics and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

B. Analysis

In its Amended Complaint, the Union brings three causes of action against Defendant under (1) the Labor Management Relations Act ("LMRA") § 301 for violations of the IBT's constitution, including, inter alia, failure to return the Union Property, (*see* Union's Am. Compl. ¶¶ 109–25); (2) the New York Labor and Management Improper Practices Act, N.Y. LAB. LAW § 722, for, inter alia, failure to return the Union Property, (*see id.* ¶¶ 126–39); and (3) New York common law for breach of Defendant's fiduciary duties of loyalty and good faith, (*see id.* ¶¶ 140–46). In their Complaint, Health Fund Plaintiffs bring four causes of action against Defendant under the Employee Retirement Income Security Act ("ERISA") for breach of fiduciary duty. (*See* Health Fund Pls.' Compl. ¶¶ 130–44.) Three of Health Fund Plaintiffs' claims concern misconduct that is not at issue in Health Fund Plaintiffs' Motion; the fourth concerns Defendant's extortion of bribes from Crossroads. (*See id.* ¶¶ 145–74.)

14

The Union argues that it is entitled to summary judgment on its LMRA and New York labor law claims based on Defendant's failure to return the Union Property, (*see* Union's Mem. 4–6), and Health Fund Plaintiffs argue that they are entitled to summary judgment on its ERISA claim for breach of fiduciary duty based on Defendant's extortion of bribes from Crossroads, (*see* Health Fund Pls.' Mem. 5–8).  The Court will address each argument, in turn.

### 1.  Union's LMRA & New York Labor Law Claims

#### a.  LMRA Claim

Section § 301 of the LMRA, codified at 29 U.S.C. § 185, provides that:

> (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in a district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

> (b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents.  Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States.  Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

29 U.S.C. §§ 185(a)–(b).  The Supreme Court has made clear that the statute's provision of federal jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce" encompasses claims for violation of union constitutions, *see United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of the U.S. & Canada, AFL-CIO v. Local 334, United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Canada*, 452 U.S. 615, 619–27 (1981), and the Second Circuit has made clear that "individual defendants may be subject to liability for violations of union constitutions," at least to the extent that a plaintiff seeks equitable

relief, *see Shea v. McCarthy*, 953 F.2d 29, 32–33 (2d Cir. 1992).  What is less clear, however, is whether under § 301 a plaintiff can recover damages from an individual defendant for violations of union constitutions, as the Union seeks to do here.

The potential statutory roadblock is § 301(b), which provides in relevant part that "[a]ny money judgment against a labor organization in a district court of the United States . . . shall not be enforceable against any individual member or his assets."  29 U.S.C. § 185(b).  The Supreme Court in *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238 (1962), interpreted § 301(b) to bar claims for damages against individual union members where the union members had stopped working at the direction of their union and thereby violated the no-strike clause of the union's collective bargaining agreement with the employer.  *See id.* at 248 ("The national labor policy requires and we hold that where a union is liable for damages for violation of the no-strike clause, its officers and members are not liable for those damages. . . . Where the union has inflicted the injury it alone must pay.").  And in *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401 (1981), the Supreme Court extended this jurisdictional bar, holding that "§ 301(a) does not sanction damages actions against individual employees for violating the no-strike provision of the collective-bargaining agreement, whether or not their union participated in or authorized the strike."  *Id.* at 416.  It appears that neither the Supreme Court nor the Second Circuit has yet weighed in on the question of whether an individual defendant may face personal liability for damages in a suit brought pursuant to § 301(a) where violation of a no-strike provision is not at issue.  However, the Court finds that *Rammers & Pavers Union, Local 1010 of the Laborers Int'l Union of N. Am. v. Falzone*, No. 05-CV-2336, 2009 WL 1322352 (E.D.N.Y. May 12, 2009) ("*Local 1010*"), a case from the Eastern District of New York, is instructive.

In *Local 1010*, Local 1010, a constituent entity of the Laborer's International Union of North America ("LIUNA"), brought suit against a number of former officers who Local 1010 claimed had "breached their obligations under various LIUNA Constitutions in violation of [§] 301" by going to great lengths to protect the employment of an officer of Local 1010's benefit fund that LIUNA had determined was "a Gambino crime family associate and had, among other things, extorted $25,000 from a contractor." *Id.* at *1–5. The defendants moved for summary judgment, arguing, inter alia, that "[the] plaintiffs' federal claims must be dismissed because they seek monetary relief, which is not available against individual defendants under § 301(b)." *Id.* at *5. The court examined relevant case law, including *Atkinson*, *Complete Auto Transit*, and *Shea*, and concluded that:

> The better view of § 301(b) is that it merely protects individual union members from damages liability for injuries caused by the wrongful acts of their union. It does not, however, immunize individual union officials from liability for their own breaches of a union constitution. This is especially true here, where the breaches do not concern the union/employer relationship—as was Congress' chief concern, but rather go to the heart of the union representation of its members' interests.

*Id.* at *7. Accordingly, the court concluded that "§ 301 does not, as a matter of law, bar all forms of monetary relief." *Id.* at *9.

While the *Local 1010*'s conclusion was dicta—because the plaintiffs had "abandoned their damages claims under § 301 and sought to refashion them as claims for declaratory and equitable relief," *id.* at *7—and in any event, *Local 1010* is not binding on this Court as a decision from a sister district, the Court nonetheless finds *Local 1010*'s reasoning to be sound and persuasive, *see also Gillis v. Wilhelm*, No. 09-CV-1116, 2010 WL 1375167, at *5 (S.D.N.Y. Mar. 29, 2010) (citing *Local 1010* for the proposition that "[u]nion members serving as union officers may . . . be sued under § 301(a) [for monetary as well as equitable relief] for allegedly violating the obligations imposed by the union constitution upon all its members"). In the

absence of contradictory in-Circuit authority identified either by Defendant or by the Court in

conducting its own research, the Court thus finds that the Union may seek damages under § 301

against Defendant here for Defendant's alleged violations of the IBT constitution.

Having determined that the Union does have statutory authorization for its LMRA claim

against Defendant, the remainder of the Court's task is simple, because there is no dispute that

Defendant failed to return the Union Property after he was removed from his Union positions

and in so doing, violated the IBT constitution.  *See supra* I.A.1.  Moreover, there is no dispute

that Defendant's violation of the IBT constitution via failure to return the Union Property

damaged the Union in the amount of $2,324.75.  *See id.*  Accordingly, the Court grants summary

judgment to the Union on the Union's LMRA claim based on Defendant's failure to return the

Union Property in the amount of $2,324.75.

### b.  New York Labor Law Claim

Section 722 of the New York Labor Law provides that:

> No officer or agent of a labor organization shall, directly or indirectly [1] Have or
> acquire any pecuniary or personal interest which would conflict with his fiduciary
> duty to such organization; [2] Engage in any business or financial transaction which
> conflicts with his fiduciary obligation; or [3] Act in any way which subordinates
> the interests of such labor organization to his own pecuniary or personal interests.

N.Y. LAB. LAW § 722.  Section 725 of the same chapter provides the "labor organization and the

parent organization of such labor organization" with a right of action "for legal or equitable relief

to redress" violations of, inter alia, § 722.  N.Y. LAB. LAW § 725(1).  Section 725 also provides

for "reasonable attorneys' fees and disbursements out of any moneys awarded or funds or assets

recovered" in an action that successfully brings such a claim.  N.Y. LAB. LAW § 725(2).

There is a dearth of case law interpreting these provisions of the New York Labor Law;

indeed, the Court was unable to find a single case providing any manner of standards with which

to interpret these statutes and the Union (and, of course, Defendant) did not provide any.  (*See*

Union's Mem. 5–6.)  However, "[w]hen faced with a question of statutory interpretation, a court's starting point 'is the statute's plain meaning, if it has one,'" *Kane ex rel. United States v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 384 (S.D.N.Y. 2015), and the Court here finds that the plain meaning of these statutory provisions counsels in favor of granting the Union's Motion as to this claim as well.

As explained above, there is no dispute that Defendant failed to return the Union Property, *see supra* II.B.1.b., which, practically speaking, amounts to theft of the Union Property.  It takes little imagination to conclude that a union officer's theft of union property constitutes "act[ing] in any way which subordinates the interests of such labor organization to his own pecuniary or personal interests."  N.Y. LAB. LAW § 722(3).  Accordingly, the Court grants summary judgment to the Union on the Union's New York labor law claim based on failure to return Union Property in the amount of $2,324.75, as well.[8]

### 2.  Health Fund Plaintiffs' ERISA Claim for Bribery

Health Fund Plaintiffs argue that there is no dispute that Defendant extorted bribes from Crossroads in exchange to ensuring that the Health Fund maintained Crossroads as a third-party administrator, and that in so doing, Defendant violated §§ 404(a) and 406(b) of ERISA, for which Health Fund Plaintiffs are entitled to damages, including disgorgement.  (*See* Health Fund

---

[8] The Union also argues that it "is entitled to reimbursement of the reasonable attorneys' fees related to this [M]otion as this [M]otion would not have been necessary if [Defendant] had simply complied with his obligations to return the Union Property."  (Union's Mem. 6.)  However, § 725 provides that "[i]f any such action or proceeding is determined in favor of such organization or any such member, the court may award . . . reasonable attorneys' fees and disbursements *out of* any moneys awarded or funds or assets recovered in such action or proceeding."  N.Y. LAB. LAW § 725(2) (emphasis added).  Accordingly, the plain language of § 725 does not provide for attorneys' fees separate and apart from any award of damages, but rather allows for the Court to award a portion of the damages award as attorneys' fees.

The Court will discuss with the Union whether it intends to pursue attorneys' fees in light of this ruling at the October 6, 2022 conference.  *See infra* III.

Pls.' Mem. 5–8.)  Because the Court finds that Health Fund Plaintiffs are entitled to summary judgment on their claim that Defendant violated § 406(b) of ERISA, the Court need not address Health Fund Plaintiffs' claim as to § 404(a).

Section 406(b) provides that "[a] fiduciary with respect to a plan shall not," inter alia "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."  29 U.S.C. § 1106(b)(3).  "The legislative history of § 406(b) and relevant case law indicate that Congress sought to prevent 'kickbacks[,'] making 'illegal per se the types of transactions that experience had shown to entail a high potential for abuse.'"  *Lowen v. Tower Asset Mgmt., Inc.*, 653 F. Supp. 1542, 1553 (S.D.N.Y. 1987) (quoting *Donovan v. Cunningham*, 716 F.2d 1455, 1465 (5th Cir. 1983)), *aff'd*, 829 F.2d 1209 (2d Cir. 1987)); *see also Skin Pathology Assocs., Inc. v. Morgan Stanley & Co.*, 27 F. Supp. 3d 371, 375 (S.D.N.Y. 2014) ("[Section] 406(b)(3) prohibits payment to a plan fiduciary of kickbacks or other consideration by persons having an interest in a transaction involving plan assets.").

Here, there is no dispute that Defendant violated § 406(b) in soliciting thousands of dollars in kickbacks from Crossroads; indeed, he admitted to this exact conduct under oath in pleading guilty to conspiracy to solicit and receive bribe payments to influence the operation of an employee benefit plan.  *See supra* I.A.2., I.B.  Therefore, the Court finds that the Health Fund Plaintiffs are entitled to summary judgment on their claim under § 406(b) of ERISA.[9]

---

[9] To the extent Defendant attempts to assert that he did not extort bribes from Crossroads in exchange for ensuring that the Health Fund maintained Crossroads as a third-party administrator, (*see, e.g.*, Ulrich Ltr. 3–4 (apparently arguing that the accusation that Defendant ensured that Crossroads would be maintained as the Health Fund's third-party administrator is "false and untrue just like the other accusations," because meeting minutes "will reflect that at absolutely no time were there any discussions regarding the defendant stating or telling members of the Local 812 Health Fund not to terminate Crossroads Healthcare")), the Court will not find

Moreover, Health Fund Plaintiffs correctly note that pursuant to § 409(a) of ERISA, Defendant is personally liable to the Health Fund for the losses caused by the breach of his fiduciary duty, including disgorgement.  *See* 29 U.S.C. § 1109(a) (explaining that fiduciaries found in violation of, inter alia, § 406(b) "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach[] and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary").  There is no dispute that had Defendant not intervened to ensure that the Health Fund maintained Crossroads as its third-party administrator (in exchange for significant personal kickbacks), then the Health Fund would have replaced its third-party administrator and saved an estimated $1,007,228.78 in per capita fees.  *See supra* I.A.2.  Accordingly, the Court grants summary judgment to the Union on the Union's ERISA claim under § 406(b) based on Defendant's extortion of bribes from Crossroads in the amount of $1,007,228.78.[10]

### III.  Conclusion

For the foregoing reasons, the Motions are granted.  The Clerk of Court is directed to terminate the pending motions, (*see* Dkt. Nos. 142, 145, 150, 155, Case No. 17-CV-137; Dkt. No. 75, Case No. 17-CV-7023); enter judgment for the Union on its claim for violation of the

---

that this assertion creates a genuine dispute of material fact sufficient to defeat summary judgment.  Defendant admitted to this misconduct under oath before Judge Torres as part of his guilty plea, and Defendant "cannot create a disputed issue of material fact relevant to the summary judgment analysis simply by contesting the basis for his guilty plea."  *Sanabria v. Martins*, 568 F. Supp. 2d 220, 225–26 (D. Conn. 2008) (citing *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991)).

[10] Health Fund Plaintiffs also argue that Defendant is liable to the Health Fund in the amount of the bribes themselves as disgorgement.  (*See* Health Fund Pls.' Mem. 8.)  The Court agrees, but Health Fund Plaintiffs have not provided to the Court with any evidence demonstrating the amount of money that Defendant was paid in bribes.

The Court will discuss with Health Fund Plaintiffs a schedule for the submission of this evidence if Health Fund Plaintiffs still intend to pursue disgorgement at the October 6, 2022 conference.  *See infra* III.

IBT constitution based on Defendant's failure to return the Union Property; and enter judgment for Health Fund Plaintiffs on their claim for breach of fiduciary duty based on Defendant's extortion of bribes from a vendor.

The Court will hold a telephonic status conference in both related cases on October 6, 2022 at 3:00 PM.  Meeting Dial-In Number (USA toll-free): (888) 363-4749.  Access Code: 7702195.  Please enter the conference as a guest by pressing the pound sign (#).

At the conference, the Union and Health Fund Plaintiffs should be prepared to discuss a concrete plan for the expedient resolution of these five-year-old cases, particularly in light of the fact that Defendant (1) has already been convicted of federal charges concerning the same course of conduct, (2) is currently serving an 18-month sentence on those charges, (3) is in poor health, and (4) has represented that he is in the midst of filing for personal bankruptcy.  (*See, e.g.*, Ulrich Ltr.)

The Clerk of Court is directed to mail a copy of this Opinion & Order to Defendant at the address listed in the docket for Case No. 17-CV-7023.

SO ORDERED.

Dated:   August 30, 2022
         White Plains, New York

_____
          KENNETH M. KARAS
         United States District Judge